UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ALESHIA MCMILLEN SULAYMU-BEY,

                Plaintiff,

-against-

PORT AUTHORITY OF NEW YORK AND NEW JERSEY; JOHN DOE NJT EMPLOYEE; MOJDEH MOAYYED; DADRIAN HALL/TARA,

                Defendants.

22-CV-10097 (LTS)

ORDER OF DISMISSAL

---

LAURA TAYLOR SWAIN, Chief United States District Judge:

    Plaintiff, who is proceeding *pro se* and *in forma pauperis*, brings this action asserting violations of her rights under 42 U.S.C. §§ 1981, 1983, Title VI of the Civil Rights Act, 42 U.S.C. § 2000d, and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq*. She also contends that she was the victim of a hate crime. Plaintiff alleges that late on January 6, 2020, a New Jersey Transit employee directed a racial slur at her as she was rushing to catch the last bus to New Jersey from the Port Authority of New York and New Jersey ("Port Authority") bus terminal in Manhattan.

    This matter is now before the Court for screening of Plaintiff's amended complaint.[1] (ECF 11.) The Court has reviewed the amended complaint and dismisses it for the reasons set forth below.

---

[1] By order dated January 3, 2023, the Court dismissed this action with leave to replead, and judgment entered on February 6, 2023. Plaintiff then sought reconsideration, which the Court granted (ECF 10), and she filed a notice of appeal. The Second Circuit dismissed the appeal by mandate issued August 8, 2023. (ECF 12.)

**STANDARD OF REVIEW**

The Court must dismiss an *in forma pauperis* complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). The Court must also dismiss a complaint when the Court lacks subject matter jurisdiction of the claims raised. *See* Fed. R. Civ. P. 12(h)(3).

While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted) (emphasis in original). But the "special solicitude" in *pro se* cases, *id*. at 475 (citation omitted), has its limits – to state a claim, *pro se* pleadings still must comply with Rule 8 of the Federal Rules of Civil Procedure, which requires a complaint to make a short and plain statement showing that the pleader is entitled to relief.

Rule 8 requires a complaint to include enough facts to state a claim for relief "that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if the plaintiff pleads enough factual detail to allow the Court to draw the inference that the defendant is liable for the alleged misconduct. In reviewing the complaint, the Court must accept all well-pleaded factual allegations as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). But it does not have to accept as true "[t]hreadbare recitals of the elements of a cause of action," which are essentially just legal conclusions. *Twombly*, 550 U.S. at 555. After separating legal conclusions from well-pleaded factual allegations, the Court must determine whether those facts make it plausible – not merely possible – that the pleader is entitled to relief. *Id.*

## BACKGROUND

In her amended complaint, Plaintiff Aleshia McMillen Sulaymu-Bey alleges the following facts. Late in the evening on Sunday, January 6, 2020, Plaintiff was at the Port Authority bus terminal in Manhattan, to take a bus home to New Jersey. (ECF 11 at 15.) Plaintiff was rushing to board the last bus for the evening and needed directions. (*Id.* at 15-16.) She asked an employee, who was a "starter worker in a neon green jacket" near gate 326, for directions. (*Id.* at 16.) This individual, who is not named as a defendant in this action, "seemed irritable" and did not want "to give help with directions."[2] (*Id.* at 21.) He nevertheless followed Plaintiff as she boarded the bus.

At some point, a man wearing a grayish blue jacket, whom Plaintiff identifies as a New Jersey Transit (NJT) employee, used a racial slur.[3] (*Id.* at 5, 21.) Plaintiff states that this defendant, who is sued as "John Doe NJT employee," did so "because he refused to give [her] directions." (*Id.* at 5.) When Plaintiff and her daughter boarded the bus at gate 308, she described the slur to the bus driver. (*Id.* at 17.) Thereafter, Plaintiff "cried for weeks, months, and years of ongoing pain." (*Id*.)

Plaintiff attaches to her amended complaint documents relating to eviction proceedings in New Jersey Superior Court and documents related to expungement of criminal records. Plaintiff sues the Port Authority, "John Doe NJT employee," and individuals who are listed as defendants

---

[2] Although Plaintiff refers to this individual in the neon jacket as "John Doe," the only Doe Defendant named as a defendant is "John Doe NJT employee," a different individual. Plaintiff refers to another individual (the bus driver) as Jane Doe, though she also does not name the bus driver as a defendant, or allege that she did anything that violated Plaintiff's rights.

[3] Plaintiff alleges that she is "a Moorish American and [has a] Copper complexion." (ECF 11 at 11.) She is "not African-American, Black, colored, and/or Negro." (*Id.*)

3

but not otherwise mentioned in the amended complaint (Mojdeh Moayyed and Dadrian Hall/Tara). Plaintiff seeks $300,000 in damages.

## DISCUSSION

### A. Claims under the ADA

Plaintiff invokes the ADA, and the Court therefore considers whether she states a claim against the Port Authority under Title II of the ADA, which prohibits disability discrimination by public entities, 42 U.S.C. § 12131 *et seq.*,[4] or under Title III, which prohibits disability discrimination in access to public accommodations, 42 U.S.C. § 12181 *et seq.* The purpose of the ADA is "to ensure evenhanded treatment between the disabled and the able-bodied." *Garcia v. S.U.N.Y. Health Scis. Ctr. of Bklyn.*, 280 F.3d 98, 112 (2d Cir. 1998). Plaintiff makes no allegation that she is disabled. Even if Plaintiff is disabled, she makes no allegation that the incident in which an NJT employee used a racial slur was related to any disability that she might have. Plaintiff thus fails to state a claim under the ADA.[5]

### B. Claims against John Doe NJT employee

#### 1. 42 U.S.C. § 1983

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege that a person acting under the color of state law, or a "state actor," violated a right secured by the Constitution or laws of

---

[4] Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Title III of the ADA provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation." 42 U.S.C. § 12182(a).

[5] In addition, Plaintiff seeks only money damages, which are not available for a violation of Title III. *See Powell v. Nat'l Bd. of Med. Exam'rs*, 364 F.3d 79, 86 (2d Cir. 2004) ("Monetary relief, however, is not available to private individuals under Title III of the ADA.").

4

the United States. *West v. Atkins*, 487 U.S. 42, 48-49 (1988). Plaintiff asserts a claim under Section 1983 against "John Doe NJ Transit employee" based on her allegation that he used a racial slur.

It is well established that "verbal harassment alone does not amount to a constitutional deprivation." *Ali v. Connick*, 136 F. Supp. 3d 270, 276 (E.D.N.Y. 2015). Even "the use of racial slurs or epithets reflecting racial prejudice, although reprehensible, does not form the basis of a claim pursuant to [Section] 1983," absent some additional appreciable injury. *Baskerville v. Goord*, No. 97-CV-6413, 2000 WL 897153, at *3 (S.D.N.Y. July 6, 2000); *Purcell v. Coughlin*, 790 F.2d 263, 265 (2d Cir. 1986) (holding that name-calling without "any appreciable injury" did not violate inmate's constitutional rights); *Haussman v. Fergus*, 894 F. Supp. 142, 149 (S.D.N.Y. 1995) ("[T]he taunts, insults and racial slurs alleged to have been hurled at plaintiff by defendants, while reprehensible if true, do not comprise an infringement of constitutional guarantees."). By contrast, allegations of verbal harassment coupled with other injury can state a claim for a violation of constitutional rights. *See Cole v. Fischer,* 379 F. App'x 40, 43 (2d Cir. 2010) (summary order) ("When the verbal harassment and simultaneous physical abuse . . . are considered together, we have little trouble concluding that plaintiff's allegations were sufficient to state a § 1983 claim for discrimination on the basis of race[.]").

Here, Plaintiff has alleged that John Doe NJT employee used an epithet reflecting racial prejudice. As offensive as this alleged conduct is, verbal harassment alone does not amount to a deprivation of rights protected by the U.S. Constitution. Because Plaintiff's brief interaction with John Doe was limited to this verbal harassment, the facts alleged are insufficient to rise to the level of a violation of her constitutional rights.

2.   42 U.S.C. § 1981

Plaintiff also invokes 42 U.S.C. § 1981 as a basis for her claims. To state a claim of discrimination under Section 1981, a plaintiff must allege facts showing that: "(1) [the] plaintiff[] [is a] member[] of a racial minority; (2) [the] defendant['s] intent to discriminate on the basis of race; and (3) discrimination concerning one of the statute's enumerated activities." *Brown v. City of Oneonta,* 221 F.3d 329, 339 (2d Cir. 2000) (citing *Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085, 1087 (2d Cir. 1993) (per curiam)). Those enumerated activities include the rights "to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property." 42 U.S.C. § 1981(a). "[A] plaintiff must . . . plead . . . that, but for race, [the plaintiff] would not have suffered the loss of a legally protected right." *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 140 S. Ct. 1009, 1019 (2020). Thus, for a claim of race discrimination under Section 1981, "it is insufficient to merely plead that race was a motivating factor in the discriminatory action." *Brown v. Montefiore Med. Ctr.*, No. 19-CV-11474 (ALC), 2021 WL 1163797, at *5 (S.D.N.Y. Mar. 25, 2021) (citing *Comcast Corp.*, 140 S. Ct. at 1017-18).

Plaintiff's allegations that John Doe NJT employee treated her disrespectfully are insufficient to allege that she suffered the loss of a legally protected right. Plaintiff's allegations thus fail to state a claim under Section 1981 on which relief can be granted.

3.   Title VI

Although Plaintiff also invokes Title VI of the Civil Rights Act, this section applies only to entities that receive federal funding. *See Goonewardena v. New York*, 475 F. Supp. 2d 310, 328 (S.D.N.Y. Feb. 14, 2007) ("Title VI claims cannot be asserted against an individual defendant because the individual is not the recipient of federal funding."). Because a Title VI claim cannot be brought against an individual defendant, Plaintiff cannot state a claim against John Doe under

6

this section, and this claim is dismissed as against John Doe for failure to state a claim on which relief can be granted.

### C. Claims against Port Authority

#### 1. Section 1981 and 1983 claims

Plaintiff sues the Port Authority, which is a bi-state entity with the legal capacity to be sued. *See* N.Y. Unconsol. Laws § 7101; N.J. Stat. Ann. § 32:1-157.[6] "Although the Port Authority is not technically a municipality, courts have treated it as such and have analyzed claims against it under the standards governing municipal liability under § 1983." *Cumberbatch v. Port Auth. of N.Y. & N.J.*, No. 03-CV-0749, 2006 WL 3543670, at *6 (S.D.N.Y. Dec. 5, 2006) (internal quotation marks and citation omitted); s*ee Raysor v. Port Auth. of N.Y. & N.J.*, 768 F.2d 34, 38 (2d Cir. 1985) ("[T]he Port Authority was properly dismissed because there was no showing that the injury was caused by execution of a custom or policy of the Port Authority, as required by *Monell v. Department of Social Services*, 436 U.S. 658, 691-95 [(1978)]."). Courts also analyze Section 1981 claims under *Monell*. *See Patterson v. Cnty. of Oneida, N.Y.*, 375 F.3d 206, 226 (2d Cir. 2004) ("[W]hen the defendant sued for discrimination under § 1981 or § 1983 is a municipality . . . the plaintiff is required to show that the challenged acts were performed pursuant to a municipal policy or custom.").

It is settled that the "[l]iability of a municipal defendant . . . under § 1981 and § 1983 cannot, however, be premised on a theory of *respondeat superior*." *Id.* When a plaintiff sues a

---

[6] The Court also notes that the Port Authority does not enjoy Eleventh Amendment immunity from suit in federal court. *Feeney v. Port Auth. Trans-Hudson Corp.*, 873 F.2d 628, 629-30, 633 (2d Cir. 1989) ("We conclude that the Port Authority . . . is not a state agency for Eleventh Amendment purposes."), *aff'd*, 495 U.S. 299 (1990); *see also Hess v. Port Auth. Trans-Hudson Corp.*, 513 U.S. 30, 42 (1994) ("[T]here is good reason not to amalgamate Compact Clause entities with agencies of 'one of the United States' for Eleventh Amendment purposes.").

municipality under Sections 1983 or 1981, it is not enough for the plaintiff to allege that one of its employees or agents engaged in some wrongdoing. Instead, the plaintiff must show that the municipality itself caused the violation of the plaintiff's rights. *See Connick v. Thompson,* 563 U.S. 51, 60 (2011) ("A municipality or other local government may be liable under this section if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation." (quoting *Monell*, 436 U.S. at 692)); *Cash v. Cnty. of Erie,* 654 F.3d 324, 333 (2d Cir. 2011). Thus, to state a Section 1981 or 1983 claim against a municipality, the plaintiff must allege facts showing (1) the existence of a municipal policy, custom, or practice, and (2) that the policy, custom, or practice caused the violation of the plaintiff's constitutional rights. *See Jones v. Town of East Haven*, 691 F.3d 72, 80 (2d Cir. 2012).

Plaintiff has not alleged any facts showing the existence of a Port Authority policy, custom, or practice that caused the violation of her constitutional rights. Plaintiff's first allegation is that an employee of NJT, which is an entity separate from the Port Authority, used a racial slur that seemed to be directed to her. These allegations are insufficient to plead (1) a violation of her constitutional rights; or (2) that this incident was caused by Port Authority policy, custom, or practice. Plaintiff's allegations are therefore insufficient to state a claim under Sections 1981 or 1983 against Defendant Port Authority.

Plaintiff's second allegation is that she "quickly needed directions," but a Port Authority "starter worker in neon green jacket . . . seemed very irritable not wanting to work or respond to give help with directions." (ECF 11 at 15, 21.) As a result, Plaintiff "got lost because [she] never received directions to get to [her] exact location in New Jersey." (*Id.* at 21.) These allegations are also insufficient to show that any policy, custom, or practice of the Port Authority caused a violation of Plaintiff's constitutional rights – both because this conduct is not attributable to the

8

Port Authority and because the allegations are insufficient to allege a violation of constitutional rights. Plaintiff thus fails to state a claim on which relief can be granted against the Port Authority under Section 1981 or 1983.

### 2. Title VI of the Civil Rights Act

Title VI provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. To state a claim under Title VI, a plaintiff must allege that (1) the defendant discriminated against her on the basis of race, color, or national origin; (2) the discrimination was intentional; and (3) the discrimination was a substantial and motivating factor for the defendant's actions. *See Tolbert v. Queens Coll.*, 242 F.3d 58, 69 (2d Cir. 2001).[7]

Plaintiff does not allege that Defendant Port Authority engaged in discrimination against her on the basis of her race, color, or national origin. She does not allege that the Port Authority had any policy, custom, or practice that discriminated on the basis of race. Plaintiff's allegation that an NJT employee used a racial slur does not show that the Port Authority discriminated against her. Plaintiff's allegations that a Port Authority trainee employee failed to quickly provide Plaintiff with directions "to get to [her] exact location in New Jersey" also cannot be the basis for a claim that the Port Authority engaged in intentional discrimination. The Court therefore dismisses Plaintiff's Title VI claim against the Port Authority for failure to state a claim on which relief can be granted.

---

[7] Congress has abrogated the Eleventh Amendment immunity of states for violations of Title VI. 42 U.S.C. § 2000d-7(a)(1) ("A State shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal court for a violation of . . . title VI of the Civil Rights Act of 1964 . . . .").

D.      **Claims against Moayyed and Hall**

Plaintiff lists Mojdeh Moayyed, and "Dadrian Hall/Tara" as defendants but does not mention them in the body of the amended complaint. These individuals were not named as parties in the initial complaint either. Because Plaintiff has not alleged any facts about what these individuals did or failed to do that violated her rights, Plaintiff fails to state a claim against these defendants. The Court therefore dismisses the amended complaint as against Defendants Mojdeh Moayyed, and "Dadrian Hall/Tara" for failure to state a claim on which relief can be granted.

E.      **Hate crime**

Plaintiff cannot initiate the arrest and prosecution of an individual in this Court because "the decision to prosecute is solely within the discretion of the prosecutor." *Leeke v. Timmerman*, 454 U.S. 83, 87 (1981). Nor can Plaintiff direct prosecuting attorneys to initiate a criminal proceeding against any defendant because prosecutors possess discretionary authority to bring criminal actions and they are "immune from control or interference by citizen or court." *Conn. Action Now, Inc. v. Roberts Plating Co.*, 457 F.2d 81, 87 (2d Cir. 1972). Instead, criminal activity can be reported to authorities, who will then make a determination about whether to prosecute. Accordingly, the Court dismisses, for failure to state a claim upon which relief may be granted, Plaintiff's allegations that she was the victim of a hate crime.

F.      **State law claims**

Plaintiff asserts a state law claim for breach of contract. A district court may decline to exercise supplemental jurisdiction over state law claims when it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Generally, "when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988). Having dismissed the federal claims over which the Court has original

jurisdiction, the Court declines to exercise its supplemental jurisdiction over any state-law claims Plaintiff may be asserting. *See Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) ("Subsection (c) of § 1367 'confirms the discretionary nature of supplemental jurisdiction by enumerating the circumstances in which district courts can refuse its exercise.'" (quoting *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997))).

**G.     Leave to Amend**

District courts generally grant a *pro se* plaintiff leave to amend a complaint to cure its defects, but leave to amend may be denied if the plaintiff has already been given an opportunity to amend but has failed to cure the complaint's deficiencies. *See Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Because Plaintiff has already had an opportunity to amend her complaint, and the amended complaint gives no indication that the defects can be cured with a further amendment, the Court declines to grant Plaintiff another opportunity to amend.

## CONCLUSION

The Court dismisses Plaintiff's federal claims for failure to state a claim on which relief can be granted, 28 U.S.C. § 1915(e)(2)(B)(ii), and declines to exercise supplemental jurisdiction of any state law claims, 28 U.S.C. § 1367(c)(3).

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. *Cf. Coppedge v. United States*, 369 U.S. 438, 444-45 (1962) (holding that an appellant demonstrates good faith when he seeks review of a nonfrivolous issue).

The Clerk of Court is directed to enter judgment in this matter.

SO ORDERED.

Dated: April 15, 2024
New York, New York

/s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
Chief United States District Judge